# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE QUORUM HEALTH CORPORATION,  Debtor. | Chapter 11<br><br>Case No. 20-10766 (BLS)<br><br>Adv. No. 21-51190 (BLS) |
| COMMUNITY HEALTH SYSTEMS, INC., CHS/COMMMUNITY HEALTH SYSTEMS, INC., REVENUE CYCLE SERVICE CENTER, LLC, CHSPSC, LLC, PROFESSIONAL ACCOUNT SERVICES, INC., PHYSICIAN PRACTICE SUPPORT, LLC, ELIGIBILITY SCREENING SERVICES, LLC, W. LARRY CASH and RACHEL SEIFERT,<br><br>Appellants,<br>v.<br><br>DANIEL H. GOLDEN, AS LITIGATION TRUSTEE OF THE QHC LITIGATION TRUST and WILMINGTON SAVINGS FUND SOCIETY, FSB, SOLELY IN ITS CAPACITY AS INDENTURE TRUSTEE,<br><br>Appellees. | Civ. No. 24-227 (GBW) |

## MEMORANDUM OPINION

Gary A. Orseck, William J. Trunk, Jack A. Herman, Lauren C. Andrews, Mark H. Russell, KRAMER LEVIN NAFTALIS & FRANKEL LLP, Washington, DC; Michael S. Neiburg, Christopher M. Lambe, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, DE – Counsel for Appellants, Community Health Systems, Inc., *et al.*

Deborah Newman, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New Yok, NY; Ben Odell, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Los Angeles, CA; Laura Davis Jones, Timothy P. Cairns, PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE – Counsel for appellee, the Litigation Trust.

May 20, 2024
Wilmington, Delaware

**WILLIAMS, U.S. DISTRICT JUDGE:**

This dispute arises out of the chapter 11 cases of Quorum Health Corporation ("QHC") and certain affiliated debtors (together, "Quorum") and in connection with an adversary proceeding (the "Adversary Proceeding")[1] brought by plaintiffs Daniel H. Golden, as Litigation Trustee of the QHC Litigation Trust (the "Litigation Trust"), and Wilmington Savings Fund Society, FSB, in its capacity as Indenture Trustee ("WFSF") under certain senior notes Quorum issued prior to the 2016 "spin-off" transaction which is at the heart of this dispute, against defendants Community Health Systems, Inc. ("CHSI"), CHS/Community Health Systems, Inc., Revenue Cycle Service Center LLC, CHSPSC, LLC, Professional Account Services, Inc., Physician Practice Support, LLC, Eligibility Screening Services, LLC, W. Larry Cash, and Rachel Seifert (collectively, the "CHSI Defendants").

Pursuant to the Debtors' plan of reorganization (B.D.I. 556-1) ("Plan"), the Debtors assigned various causes of action to the Litigation Trust arising from Quorum's 2016 spin-off from CHSI, and holders of the senior notes assigned similar prepetition causes of action to the Litigation Trust. The operative trust agreement (B.D.I. 483 at Ex. J) (the "Trust Agreement") provided that upon effectiveness of the Plan, the estates would transfer to the Litigation Trust all attorney-client privileges, work-product privileges, and any other evidentiary privileges or immunity that previously belonged to Quorum or the contributing senior noteholders. In the course of litigating the causes of action in the Adversary Proceeding, a discovery dispute arose between the parties concerning a joint privilege between CHSI and Quorum which those parties

---

[1] The docket of the adversary proceeding, captioned *Golden v. Community Health Systems, Inc., et al.*, Adv. No. 21-51190 (BLS) (Bankr. D. Del.), is cited herein as "Adv. D.I. __." The docket of the chapter 11 cases, captioned *In re Quorum Health Corp.*, No. 20-10766 (BLS) (Bankr. D. Del.), is cited herein "B.D.I. __."

1

had established in prior litigation. On February 12, 2024, the Bankruptcy Court issued an Order (Adv. D.I. 224) (the "Interlocutory Order") which ruled that the CHSI Defendants would not be permitted to withhold documents from production to the Litigation Trust solely on the basis of the joint privilege and required CHSI's production of documents by February 28, 2024.

On February 17, 2024, the CHSI Defendants filed a notice of appeal with respect to the Interlocutory Order. CHSI further filed (1) a Motion for Leave to Appeal the Interlocutory Order pursuant to Federal Rule of Bankruptcy Procedure 8004(a), or in the alternative, a Petition for Writ of Mandamus (D.I. 19); and (2) an Emergency Motion for Stay Pending Appeal (D.I. 4). On February 22, 2024, this Court issued a temporary stay of the Interlocutory Order to permit briefing and avoid the emergency imposed by the February 28, 2024 production deadline. In connection with CHSI's requested relief, the Court has considered the briefs in opposition filed by the Litigation Trust (D.I. 12, 17, 23) and Reorganized QHC (D.I. 18), as well as the declarations and replies filed by CHSI Defendants in further support of relief. (D.I. 20, 21, 24, 25). For the reasons set forth herein, the Court will deny the Motion for Leave to Appeal the Interlocutory Order and will further deny the Emergency Motion for Stay Pending Appeal as moot.

### I. BACKGROUND[2]

In 2016, CHSI began a spin-off transaction putting thirty-eight of its hospitals into a newly formed corporation - Quorum. CHSI and Quorum worked with counsel who jointly advised them as to the legal structure of the spin-off, which was completed in April 2016.

---

[2] The following facts, which appear to be undisputed, are intended merely to frame the inquiry before the Court.

2

Quorum filed for bankruptcy in April 2020, and two lawsuits from disappointed investors were filed (the "Securities Cases"). Separate counsel represented CHSI and Quorum working under a joint defense arrangement so their lawyers could communicate and strategize together without breaking each party's attorney-client privilege. Those communications contained attorney work product related to CHSI's and Quorum's defenses against the plaintiffs' allegations that the spin-off was fraudulent. The Securities Cases were settled in 2019 and 2020.

As part of Quorum's 2020 reorganization, the Litigation Trust was established to pursue causes of action arising from the spin-off transaction. The Trust Agreement purports to "transfer, assign, convey, and deliver" to the Litigation Trust "any and all attorney-client privileges, work-product privileges, or any other evidentiary privileges or immunity ... in respect of the Litigation Trust Causes of Action" that previously belonged to Quorum or the contributing senior noteholders. (*See* Trust Agreement § 2.2(a)). The Litigation Trustee and WSFS (together, "Plaintiffs") brought fifteen claims against CHSI, its affiliates, and Quorum's former directors, including fraudulent transfer. Plaintiffs' claims echo the allegations made in the Securities Cases which CHSI and Quorum had jointly defended—that CHSI inflated Quorum's post-spin financial projections so that it could induce investors to overpay for Quorum securities.

Plaintiffs asserted that the Litigation Trustee and its counsel (which the Trustee shares with WSFS) were entitled to review documents subject to any joint privilege between CHSI and Quorum, including their pre-spin joint representation privilege and their post-spin joint defense privilege in connection with the Securities Cases. Plaintiffs argued that Quorum's attorney-client privilege was transferred to the Litigation Trust, and that this transfer gave the Litigation Trustee the right to demand, access, and use the jointly privileged documents that CHSI previously shared with Quorum. CHSI asserted that Quorum could not assign or transfer CHSI's

3

rights with respect to the joint privilege, and even assuming that the Litigation Trust could access the joint privileged documents, its counsel—which also represents WSFS—could not.

On December 13, 2023, the Bankruptcy Court considered the challenged request for production of those documents which are subject to "attorney-client privileges, work-product privileges, or any other evidentiary privilege or immunities jointly held by CHSI and [QHC]" (the "CHSI-QHC Joint Privilege"). (Interlocutory Order at 2, ¶ 1). The Bankruptcy Court ruled from the bench that the Litigation Trust is entitled to discovery of the jointly privileged documents. (D.I. 4-2 ("12/13/2023 Tr.") at 21:14-25:10). The Bankruptcy Court described the Litigation Trustee as "the successor to" Quorum's "rights and [privileges]." (*Id.* at 22). Although the Litigation Trustee had not succeeded to CHSI's rights and privileges, the Bankruptcy Court reasoned that since "Quorum [would] be able to obtain this information if they were standing alone as the plaintiff," the Litigation Trustee was likewise entitled to obtain it. (*Id.*) The Bankruptcy Court further considered CHSI's argument that counsel's representation of both the Litigation Trustee and WSFS (a stranger to the privilege) raised a potential conflict but concluded that it was "satisfied that able counsel can establish structures to ensure that the rules of professional conduct and professional responsibility are abided by, notwithstanding the receipt of this information." (*Id.*) The parties submitted competing forms of order, and the Bankruptcy Court entered the order proposed by Plaintiffs—requiring document production by February 28, 2024. The Interlocutory Order further provides that:

> The QHC Litigation Trust and CHSI shall ensure that documents or information subject to the CHSI-QHC Joint Privilege are not disclosed to WSFS ... or other entities or individuals who are not party to the CHSI-QHC Privilege, and such documents and information may not be used to support any claims or defenses that may be asserted by WSFS. Documents or information subject to the CHSI-QHC Joint Privilege shall be treated as Highly Confidential

4

> under the Confidentiality Agreement and Stipulated Protective Order [Adv. D.I. 180] (the "Protective Order") [with the certain exceptions, including (under certain conditions) current/former employees, officers, or directions of the Litigation Trust and CHSI, their in-house counsel, litigation support services, and persons noticed for deposition, listed as trial witnesses, or identified as an author of a document, court officials, and any engaged or appointed mediator].
>
> In addition ..., documents or information subject to the CHSI-QHC Joint Privilege shall not be used in any depositions or open court proceedings in which a party not entitled to view the materials is present.
>
> Nothing in this Order shall be construed to preclude any party, including the CHSI Defendants, from asserting any other objection to the production of documents subject to this Order, or from objecting to the admissibility of any documents subject to this Order.

(Interlocutory Order at ¶¶ 3-5).

On February 17, 2024, the CHSI Defendants filed a notice of appeal with respect to the Interlocutory Order. Contemporaneously therewith, the CHSI Defendants filed the Emergency Motion for Stay Pending Appeal, and the Motion for Leave to Appeal the Interlocutory Order, or in the alternative, Petition for Writ of Mandamus. The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.   JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear appeals "with leave of the court, from ... interlocutory orders and decrees of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(3). Section 158(a) does not identify the standard district courts should use in deciding whether to grant such an interlocutory appeal. *See id.* "Typically, however, district courts follow the standards set forth under 28 U.S.C.

§ 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011).[3]

Under the standards of section 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). Entertaining review of an interlocutory order under § 1292(b) is appropriate only when the party seeking leave to appeal "establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). In part, this stems from the fact that "[p]iecemeal litigation is generally disfavored by the Third Circuit." *In re SemCrude, L.P.*, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754.

### III.  ANALYSIS

#### A.  Leave to Appeal the Interlocutory Order

##### 1.  Controlling Question of Law

---

[3] *See also In re Philadelphia Newspapers, LLC*, 418 B.R. 548, 556 (E.D. Pa. 2009) ("Based upon the decision of the Third Circuit in *Bertoli v. D'Avella (In re Bertoli)*, 812 F.2d 136, 139 (3d Cir. 1987), courts within this Circuit confronted with the decision whether to grant leave to allow an interlocutory appeal are informed by the criteria in 28 U.S.C. § 1292(b)").

"A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz*, 496 F.2d at 755. "'[C]ontrolling' means serious to the conduct of the litigation, either practically or legally. And on the practical level, saving of time of the district court and of the expense of the litigants [has been] deemed ... to be a highly relevant factor." *In re Boy Scouts of Am.*, 2021 WL 1174573, * 4 (D. Del. Mar. 29, 2021) (internal citation omitted). Courts have cautioned that a controlling question of law must be one "that the reviewing court could decide quickly and cleanly without having to study the record." *In re Cross Media Mktg. Corp.*, 2007 WL 2743577; at *2 (S.D.N.Y. Sept. 19; 2007) (internal citations omitted).

No party disputes that the order on appeal presents a question of law for which no review of the factual record is required. The Litigation Trust argues that under the Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 111 (2009), interlocutory privilege rulings should be reviewed "only where the ruling 'involves a new legal question or is of special consequence.'" (D.I. 17 at 1 (quoting *Mohawk*, 558 U.S. at 111)). But *Mohawk* states:

> The preconditions for § 1292(b) review—"a controlling question of law," the prompt resolution of which "may materially advance the ultimate termination of the litigation"—are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases.

*Mohawk* does not undermine CHSI's argument that the Order involves a controlling question of law. Rather, *Mohawk* reaffirmed that interlocutory orders regarding privilege should be reviewed if they meet the preconditions for review under 28 U.S.C. § 1292(b) (which are identical to the standards that courts apply when deciding motions under Federal Rule of Bankruptcy Procedure 8004). Additionally, the Order at issue is serious to the conduct of the

7

litigation—CHSI Defendants have been compelled to produce to their adversary privileged materials created in the course of defending against nearly identical claims. This factor is met.

### 2. Substantial Ground for Difference of Opinion

"The 'controlling question of law' also must be one as to which there is 'substantial ground for difference of opinion.'" *In re Boy Scouts of Am.*, 2021 WL 1174573 at *4 (citing 28 U.S.C. § 1292(b)). This calls for more than mere disagreement with the ruling of the bankruptcy court. *Id.* To satisfy this standard, "the difference of opinion must arise out of genuine doubt as to the correct legal standard." *Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 208 (D.N.J. 1996), *aff'd*, 141 F.3d 1154 (3d Cir. 1998). "A movant may also establish this factor by demonstrating an "absence of controlling law," or that "the bankruptcy court's decision is contrary to well-established law." *In re Maxus Energy Corp.*, 611 B.R. 532, 540 (D. Del. 2019).

With respect to this factor, the CHSI Defendants argue that the Interlocutory Order is irreconcilable with the Third Circuit's decision *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 379 (3d Cir. 2007) and therefore contrary to well-established law. The Court disagrees. In arguing that that the Litigation Trust is an outsider to the joint privilege held by Quorum and CHS, CHSI repeatedly cites *Teleglobe* for the proposition that a party to a joint privilege may not unilaterally waive the joint privilege as to a third party. *Id.* at 379 (holding that both parties to a joint privilege "must agree to waive the privilege in order for the waiver to take effect"). Here, however, the Litigation Trust is not a third party to the joint privilege; rather, under the Plan, the Litigation Trust is Quorum's successor with respect to the claims it is pursuing, as well as any privileges respecting those claims. As the Bankruptcy Court explained, "[t]he litigation trust under the terms of the plan and the organic documents of the trust is essentially the successor and stands in the shoes of Quorum, notwithstanding the fact that Quorum has reorganized." (12/13/2023 Tr. at 21:20-23;

8

*see also In re Flag Telecom Holdings, Ltd.*, 2009 WL 5245734, at *9-10 (S.D.N.Y. Jan. 14, 2009) (holding that "the [litigation] trustee, and no one else, stands in the shoes" of the debtor in pursuing the assigned causes of action and finding the litigation trust agreement's transfer of the attorney client privilege "valid and enforceable"); *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 213 B.R. 433, 439 (Bankr. S.D.N.Y. 1997) (holding that a liquidation trustee, as the successor-in-interest to the debtor's privilege, was entitled to joint privilege documents among the debtor and others).

The CHSI Defendants further argue that Quorum could not have assigned its interest in the joint-privileged documents to the Litigation Trust absent its consent, but it cites no cases supporting this position. As the Litigation Trust points out, multiple courts have held that a debtor may validly transfer its joint privilege rights to a successor-in-interest in bankruptcy—including a litigation trust—without the consent of the other party to the joint privilege. For example, the court in *In re Crescent Resources* held that a litigation trust created pursuant to a plan of reorganization was entitled to access documents subject to a joint privilege between the debtor and its former parent on facts that are nearly identical to those presented here. 457 B.R. 506, 511, 525, 528 (Bankr. W.D. Tex. 2011). In *Crescent*, the debtor's plan of reorganization established a litigation trust to pursue claims that the debtor could have asserted prior to filing for bankruptcy. *Id.* at 509. Under the litigation trust agreement, the reorganized debtor transferred to the litigation trust "all rights and interests to any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications associated with the Litigation Trust claims." *Id.* at 511. The litigation trust subsequently filed fraudulent transfer claims against the debtor's former parent company, alleging that the debtor's spin-off from the former parent rendered the debtor insolvent. *Id.* When the litigation trustee sought to compel the turnover of documents from a law firm that had previously represented

9

both the parent and the debtor, the parent company and law firm objected that the documents were subject to a joint privilege held by both the debtor and the parent company. Finding that the debtor's prepetition privilege "passed to the Litigation Trust by operation of the plan of reorganization," the court ruled that the parent company "cannot invoke attorney-client privilege to stop the Trust from using the joint-client files in adversary proceedings between [the parent] and the Trust." *Id.* at 525, 528.

The CHSI Defendants argue that the *Crescent* case is the *only* case cited by Plaintiffs in which a litigation trust obtained a debtor's share of a joint privilege via contractual assignment but "*Crescent* offers no guidance because the bankruptcy court did not even pass on the validity of that assignment, which was never disputed by the parties," and the decision "failed to grapple with the central premise that a joint privilege is subject to bilateral control." (D.I. 19 at 14; D.I. 24 at 12). "[I]f anything, *Crescent* [] supports CHSI's position because the bankruptcy court there observed, in reliance on *Teleglobe*, that the litigation trust could not "unilaterally waive the joint-client privilege and use jointly privileged information in proceedings involving third parties." (D.I. 19 at 14 (citing *In re Crescent*, 457 B.R. at 530)).

The Court disagrees. Applicable law regarding joint privilege protection provides that both parties to a joint privilege must consent to a waiver of the privilege, but neither can preclude the other from assigning the privilege to its successor-in-interest pursuant to a court order, as happened here, without objection from the CHSI Defendants. Indeed, other cases have upheld the transfer of a party's joint privilege rights without the consent of the other party to the joint privilege in analogous situations. In *Sec. & Exch. Comm'n v. GPB Cap. Holdings, LLC*, the court approved an order transferring to an SEC receiver "[a]ny and all attorney-client privilege, work product protection, common-interest or joint defense privilege" of a receivership entity,

10

over the objection of a joint-defendant of the entity. 2023 WL 8468467, at *17 (E.D.N.Y. Dec. 7, 2023). And numerous cases hold that a Chapter 7 trustee acquires a debtor's joint privilege rights, with no consent required from the other joint-privilege holder. *See, e.g., In re Cutuli*, 2013 WL 5236711, at *4 (Bankr. S.D. Fla. Sept. 16, 2013); *In re Equaphor Inc.*, 2012 WL 1682583, at *2-4 (Bankr. E.D. Va. May 14, 2012); *In re Hotels Nevada, LLC*, 458 B.R. 560, 578–79 (Bankr. D. Nev. 2011); *In re Ginn-LA St. Lucie Ltd., LLLP*, 439 B.R. 801, 807 (Bankr. S.D. Fla. 2010). The Bankruptcy Court's ruling is consistent with these decisions. And with respect to third party WSFS, the Interlocutory Order prohibits "documents or information subject to the CHSI-QHC Joint Privilege" from being "disclosed to WSFS" or "used to support any claims or defenses that may be asserted by WSFS." (Interlocutory Order at ¶ 3).

Finally, the CHSI Defendants argue that the Litigation Trust did not "succeed" to Quorum's rights because "this was a Chapter 11 reorganization; *not* a Chapter 7 liquidation"—thus, Quorum emerged from Chapter 11, so the Trustee did not "step into the shoes" of Quorum for privilege purposes, "nor could it: Quorum is still wearing its shoes." (*See* D.I. 24 at 10). But the CHSI Defendants cite no cases in support of the proposition that a chapter 11 debtor that emerges from bankruptcy could not have assigned its causes of actions (and privileges) to a litigating trust for the benefit of its creditors. As the Bankruptcy Court's decision is not contrary to well-established law, the second factor is not met.

### 3. Material Advancement of the Ultimate Termination of the Litigation

Of the three factors for interlocutory appeal under § 1292(b), "courts place particular weight on whether immediate appeal will materially advance the ultimate termination of the litigation." *In re Paragon Offshore PLC*, 2020 WL 1815550, at *3 (D. Del. Apr. 9, 2020) (citation and internal quotations marks omitted). An interlocutory appeal "materially advances"

11

the litigation if it "(1) eliminates the need for trial, (2) eliminates complex issues so as to simplify the trial, or (3) eliminates issues to make discovery easier and less costly." *Id.* (cleaned up). The CHSI Defendants argue that interlocutory review is appropriate because it would eliminate issues and make discovery easier and less costly; as there are thousands of documents potentially subject to the joint privilege, they argue, "reversing the bankruptcy court's erroneous ruling would greatly reduce the burden of discovery." (D.I. 19 at 15). The CHSI Defendants submitted a declaration in support of its assertion that at least 4,600 documents are subject to the joint privilege: (*See* D.I. 25 ¶¶ 4-5). Immediate appeal of the Interlocutory Order would also simplify the trial, the CHSI Defendants assert:

> This case involves third parties that are not entitled to privileged materials regardless of the outcome of this dispute. If the Litigation Trustee gains access to the joint-privileged materials, parts of the trial would have to be conducted under seal, without the other parties present. The bankruptcy judge also would have to reach decisions on two identical sets of claims based on two different factual universes: one where jointly privileged information can be considered, and one where it cannot. Reviewing (and correcting) the bankruptcy court's order now would obviate such chaos.

(*Id.*) Notwithstanding this compelling argument, CHSI Defendants have not demonstrated a substantial ground for difference of opinion arising out of a genuine doubt as to the correct legal standard. Thus, the extraordinary relief of interlocutory appeal simply is not warranted.

### B.  Petition for Writ of Mandamus

Should this Court hold that interlocutory review is not warranted, the CHSI Defendants urge the Court to exercise its discretion to issue a writ of mandamus directing the Bankruptcy Court to withdraw the Interlocutory Order pursuant to the All Writs Act, 28 U.S.C. § 1651. (*See* D.I. 19 at 22-25). As the CHSI Defendants point out, the Third Circuit has held on multiple occasions that mandamus is an appropriate remedy to prevent the improper disclosure of

12

privileged materials due to the lack of an adequate alternative. *See, e.g., Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir. 1994); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 89 (3d Cir. 1992).

"To obtain mandamus relief, the petitioner must establish both that there is (1) no other adequate means to attain the relief sought, and (2) a right to the writ that is clear and indisputable." *In re Baldwin*, 700 F.3d 122, 127 (3d Cir. 2012) (quotation marks omitted). Because the Court finds interlocutory review is not warranted, the CHSI Defendants assert, the first prong is necessarily met. (D.I. 19 at 23).

With respect to the second prong, a "clear error of law" is sufficient to demonstrate a petitioner's right to the writ. *In re Patenaude*, 210 F.3d 135, 141 (3d Cir. 2000). "Moreover, mandamus can apply to discretionary acts where petitioners can demonstrate a 'clear abuse of discretion.'" *Id.* (quoting *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 309 (1989)). According to the CHSI Defendants, this prong is met, as it "was error for the bankruptcy court to rule that Quorum could transfer the joint privilege to the Litigation Trust when Quorum never held such unilateral rights in the first place," and "the bankruptcy court abused its discretion when it ordered CHSI to produce privileged documents to attorneys who jointly represent both the Litigation Trustee and WSFS on the exact same claims based on the exact same allegations." (D.I. 19 at 24).

The Bankruptcy Court did not commit clear error in compelling production because the Litigation Trust, standing as Quorum's successor, is entitled to access and use the same documents that Quorum could have accessed and used prior to the privilege vesting in the Litigation Trust. There is no abuse of discretion as the Interlocutory Order includes provisions to ensure that the joint-privileged documents are protected from disclosure to or use by WSFS and other parties not privy to the joint privilege. While the implications of the Bankruptcy Court's

13

ruling are not lost on this Court, the Interlocutory Order appears consistent with all existing precedent. The CHSI Defendants' right to a writ is far from "clear and undisputable" here. *Baldwin*, 700 F.3d at 127.

### C. Emergency Motion for Stay Pending Appeal

Because interlocutory appeal is unwarranted, and mandamus relief is not appropriate, the Emergency Motion for Stay Pending appeal is denied as moot.

### IV. CONCLUSION

For the reasons explained above, the Court will deny the CHSI Defendants' requests for relief. An appropriate order follows.